**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X

EMMANUEL DENIS,

                         Plaintiff,

           - against -

THE COUNTY OF NASSAU,
PO KIERAN HEALEY, Shield No. 3755,
Individually and in his Official Capacity,
DETECTIVE RUSSELL R. BASTONE,
Individually and in his Official Capacity, and
PO LARRY A. BRUE, Individually and
in his Official Capacity,

                         Defendants.
----------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**

CV 17-4732 (ADS) (AKT)

## I.    PRELIMINARY STATEMENT

Plaintiff commenced this civil rights action, pursuant to 42 U.S.C. § 1983, against the

County of Nassau, Police Officer Kieran Healy ("Officer Healy" or "Healy") and John Does

1-10, alleging, *inter alia*, false arrest and malicious prosecution.  *See* Compl. [DE 1].  On

February 13, 2018, Plaintiff filed an Amended Complaint – the operative pleading here –

asserting the same causes of action against the County of Nassau and Officer Healy and naming

– in place of John Does 1-10 – Police Officers Larry Brue ("Officer Brue" or "Brue"), Kevin S.

Connor ("Officer Connor" or "Connor") and Ryan K. Hayden ("Officer Hayden" or "Hayden")

as well as Detective Russel R. Bastone ("Detective Bastone" or "Bastone") (together, the

"Individual Defendants").  *See* Am. Compl. [DE 19].  Defendants have moved for contempt

based on Plaintiff's purportedly improper and unauthorized disclosure of confidential documents

produced by Defendants during the course of discovery, including the Individual Defendants'

personnel and disciplinary records, in violation of a binding confidentiality order.  *See*

Defendants' March 22, 2019 Letter Motion for Contempt ("Defs.' Letter Mot.") [DE 47];

Defendants' Memorandum in Support of Motion for Contempt ("Defs.' Mem.") [DE 67].[1]

Plaintiff's counsel opposes the motion, arguing primarily that sanctions are unwarranted here

because the failure to comply was neither willful nor in bad faith. *See* Plaintiff's Memorandum

in Opposition (Pl.'s Opp'n) [DE 64]. For the reasons which follow, Defendants' motion for

contempt is DENIED; however, the Court grants alternative relief.

## II.    RELEVANT BACKGROUND AND EVIDENCE [2]

On April 30, 2018, the parties submitted for the Court's review and approval their

Proposed Stipulation and Order of Confidentiality (the "Confidentiality Order") governing

discovery and disclosure of information and/or records deemed confidential. *See* DE 32. Upon

review, the Court "so ordered" the Confidentiality Order on May 1, 2019. *See* Stipulation and

Order of Confidentiality [DE 33]. The Confidentiality Order was entered into evidence during

the April 30, 2019 evidentiary hearing as Defendants' Exhibit 4. Significantly, the parties do not

dispute the terms of the Confidentiality Order, its application to discovery in the instant lawsuit,

or the manner in which it was executed. *See* Fernandez Decl. ¶ 6 (citing Hr'g Tr. 34:22-36:7,

---

[1]     The Court notes that Defendants' application was initially filed by letter motion on March 22, 2019 ("Defendants' Letter Motion"). In light of the nature of the requested relief, the Court conducted an evidentiary hearing on Defendants' Letter Motion on April 30, 2019. *See* April 30, 2019 Civil Conference Minute Order [DE 56]; *see also* April 30, 2019 Transcript of Hearing on Motion before Hon. A. Kathleen Tomlinson ("Hr'g Tr.") [DE 59]. At the conclusion of the presentation of evidence and counsel's closing arguments, the Court set a briefing schedule for formal post-hearing briefs. *Id.* The parties' post-hearing filings, together with Defendants' Letter Motion, are before the Court at this time.

[2]     For purposes of this Memorandum and Order, the facts are derived from the evidence adduced at the April 30, 2019 hearing, the parties' papers – including the Declarations of Deputy County Attorney Pablo Fernandez in Support of Defendants' Motion ("Fernandez Decl.") [DE 66] and Attorney Moshe Horn in Opposition to Defendants' Motion ("Horn Decl.") [DE 63] as well as any attached exhibits – and the ECF docket generally.

44:14-45:3).  Any citations to the "Confidentiality Order" will refer equally to Defendants'

Exhibit 4 and the Stipulation and Order of Confidentiality at DE 33.   As set forth in the

Confidentiality Order:

> (a) Each and every page or sheet of all transcripts of depositions, exhibits, answers to interrogatories and requests for admissions, copies thereof, other documents and all information obtained by an inspection of files, facilities or documents by counsel for any party pursuant to pretrial discovery in this action that have been designated by the other party as compromising or containing its confidential information shall be marked "CONFIDENTIAL" and shall be retained by the receiving party's counsel and shall not be disclosed or used by an non-designated person other than those listed below. Any material marked "CONFIDENTIAL" shall be used for prosecuting and/or defending the within action only, and for no other purpose. Any unauthorized disclosure in violation of the order shall be subject to discipline by the contempt powers of the Court.

> (b ) Confidential information shall not be disclosed to any person other than (i) a party to this action and counsel for the parties to this litigation and office personnel employed or engaged in the preparation for, or in aiding in the trial of this action; (ii) independent outside persons (i.e. persons not employees of a party), not to exceed three, requested by counsel to furnish technical services or expert opinions;[] (iii) non-party witnesses called to give testimony with respect to the subject matter at deposition or trial of this action (up to a total of ten witnesses, inclusive of parties) as set forth in Fed. R. Civ. Pro. 30(a)(2)(A)(i); and (iv) the Court including necessary secretarial and law clerk personnel assisting the Court.

Confidentiality Order ¶ 6.

On May 18, 2018, Defendants served their responses to Plaintiff's Discovery Requests.

*See* Fernandez Decl. ¶ 8.  Included in Defendants' May 18, 2018 production were the Individual

Defendants' concise histories and training records (collectively, the "Confidential Records").

*See* Defs.' Letter Mot., Ex. C (May 18, 2018 Production); *see also* Hr'g Tr. at 46:11-15.

Significantly, each of the Individual Defendant's concise history contained civilian complaints

lodged against him/her – to the extent any such complaints existed as of May 18, 2018 – along

with any corresponding Internal Affairs Bureau findings substantiating, rejecting, or otherwise

disposing of any such civilian complaints.[3]  Notably, the Confidential Records were bates-stamped and designated "CONFIDENTIAL" pursuant to the terms of the Confidentiality Order. *See* Hr'g Tr. at 37:14-16, 45:20-25, 46:1-2; Horn Decl., Ex. D; Defs.' Letter Mot., Ex. C.  A "CONFIDENTIAL" watermark was prominently located in the center of each page of the Confidential Records.  *See* Horn Decl., Ex. D.  According to Attorney John Meehan ("Attorney Meehan" or "Meehan"), one of Plaintiff's attorneys working on this matter, the watermark made reading the documents difficult.  *See* Hr'g Tr. at 45:20-46:2.  As such, during a telephone conference between counsel for both parties, Attorney Meehan asked that the watermark be moved to the bottom of each page of the Confidential Records.  *Id.*  Defendants' counsel obliged and a second production was sent electronically to Plaintiff's counsel on May 21, 2018.[4]  *Id.* 46:1-2.  Upon receipt, Meehan saved this version to his law firm's computer system as "Discovery Reponses Better Copy."  *Id.* at 46:3-10.  According to Meehan, the May 18, 2018 production had been previously saved to his law firm's computer system as "Discovery Responses Confidential."  *Id.* at 46:6-8.

In August 2018, Attorney Jeffrey Groder ("Attorney Groder" or "Groder") reached out to Plaintiff's counsel to inquire about the instant lawsuit.  *See* Hr'g Tr. at 7:14-8:10.  At the time, Groder was defending Wayne Grant LaPierre in a criminal action in the County Court of Nassau County.  *Id.* at 6:21-7:4.  During the course of his representation of LaPierre, Attorney Groder learned that Officer Hayden, an Individual Defendant in the instant case, was one of the arresting

---

[3]  The version of the Confidential Records produced on May 18, 2018 is filed *under seal* as Exhibit D to Attorney Horn's Declaration.  *See* DE 63-4.

[4]  This version of the Confidential Records is filed under seal as Exhibit E to Attorney Horn's Declaration, *see* DE 63-5, and – as previously cited – Exhibit C to Attorney Fernandez's Declaration, *see* DE 48.

officers in LaPierre's Nassau County criminal case. *Id.* at 7:8-9. Attorney Groder also learned that Officer Hayden was being sued in federal court. *Id*. at 7:22-8:10. According to Groder, upon learning that Officer Hayden was named in a pending federal lawsuit, Groder performed an online search, discovered the instant lawsuit, and obtained the pleadings as well as the contact information for Plaintiff's counsel. *Id.* at 8:4-10.

Initially, when Attorney Groder reached out to the Norinsberg Firm, he spoke with Attorney Meehan. *Id.* at 47:4-7. Groder explained that Officer Hayden was the arresting officer in Wayne LaPierre's Nassau County criminal case and asked if he could have any documents from the instant lawsuit. *See id.* Attorney Meehan remembers speaking with Groder about the charge in Plaintiff's underlying criminal matter as well as the dismissal memorandum. *See id.* at 47:8-12; 55:16-21. The Court notes that the dismissal memorandum was first provided to Plaintiff's counsel on January 10, 2018 as part of Defendants' Amended Rule 26 Disclosures. *See* Horn Decl., Ex. B (Defendants' Amended Rule 26(a) Disclosures). According to Meehan, he agreed to facilitate delivery of these documents to Groder. Hr'g Tr. at 47:4-20. Meehan maintains that he did not discuss any officer training or disciplinary materials with Groder at any time. *Id.* at 55:22-25. Following their brief conversation, Meehan transferred Groder to Diego Barros ("Attorney Barros" or "Barros"), a junior attorney working under Meehan on the discovery in this case. *Id.* at 47:8-18. Attorney Meehan informed Barros of Groder's needs and directed Barros to produce the documents which Groder had requested. *Id.* at 40:1-4; 47:14-18.

Barros testified that he obtained Groder's email address and advised that he would follow up via email after conferring further with Meehan. *Id.* at 40:5-10. When Barros asked Meehan whether he could send the "discovery packet" to Groder, Meehan confirmed that he could do so. *Id.* at 40:11-12. Although Barros intended to send Groder purportedly non-confidential

documents – presumably Defendants' January 10, 2018 Amended Rule 26(a) Disclosures –
Barros sent Groder the "wrong" PDF – namely, Defendants' May 18, 2018 document
production, containing the Confidential Records, all of which were clearly labeled
"CONFIDENTIAL."[5]  Pl.'s Opp'n at 4; *see also* Hr'g Tr. at 40:13-25.   Notably, Attorney
Meehan did not ask Barros to show him which documents he was planning to send to Attorney
Groder.  *See id.* at 47:21-48:5.  Nor did Attorney Barros copy Meehan or anyone else at the law
firm on his email to Groder which shared the documents from this case.  *See id.*

Immediately upon receiving Barros' email, Groder forwarded the documents to Wayne
LaPierre, who was incarcerated at that time in the Nassau County Correctional Center.  *See id.* at
10:2011:7.  According to Attorney Groder, although he recognized that at least some of the
documents he received from Barros were stamped, "confidential," he "did not know that applied
to [him]."  *Id*. at 13:8-9.  Although LaPierre appeared at the April 30, 2019 hearing, he testified
that he did not recall having and/or being provided with any confidential documents or attending
any conferences in connection with his Nassau County criminal matter concerning his possession
of any such records.  *See id.* at  15:2-23:2.  Despite Lapierre's testimony, as set forth in
Defendants' Letter Motion, Defendants' counsel appeared before the Honorable Teresa K.
Corrigan, Supervising Judge of the Nassau County Courts, at a conference concerning LaPierre's
criminal matter on March 13, 2019.  At that time, Deputy County Attorney Fernandez
(1) informed Judge Corrigan of the Confidentiality Order in the instant case and the fact that

---

[5]  Defendants assert that the January 10, 2018 amended disclosure contained at
least some confidential documents designated "confidential" in accordance with the claw-back
provisions of the Confidentiality Order, including the dismissal memorandum from Plaintiff's
underlying criminal matter which had been sealed following the conclusion of the case.  *See*
Defs.' Mem. at 7.  As such, notwithstanding Attorney Barros' intent, Defendants maintain that a
violation of the Confidentiality Order would have nonetheless occurred.  *Id.*

Confidential Records were improperly disclosed to LaPierre in violation of this Court's Order and (2) sought to have the Confidential Records returned. *See* Defs.' Letter Mot. at 4. Apparently, Judge Corrigan conducted several hearings regarding Wayne LaPierre's possession of the Confidential Records, issued Orders directing LaPierre to return any and all copies of the records and even directed the Nassau County Sheriff's Department to enter LaPierre's Nassau County Correctional Center cell to collect and secure the records. *See id.*; *see also* H'rg Tr. at 15:20-19:11.[6] According to Defendants' counsel, at one point, LaPierre even admitted to turning the Confidential Records over to a "close friend" whom he refused to identify. *See* Defs.' Letter Mot. at 4. During the April 30, 2019 evidentiary hearing before the Court, when asked about sharing the Confidential Records with any other inmates at the Nassau County Correctional Center, LaPierre indicated that "[he] might have" but "didn't remember." *See* Hr'g Tr. at 30"3-14. Ultimately, LaPierre refused to comply with Judge Corrigan's Orders to return the documents. *See* Fernandez Decl. ¶ 20.

According to Defendants' counsel, he first learned about the unauthorized disclosure of the confidential documents on or about March 8, 2019. *See* Defs.' Letter Mot. at 2. That day, ADA Michelle Burke of the Nassau County District Attorney's Office contacted Defendants' counsel seeking to obtain copies of Officers Connor and Hayden's concise histories. *See* Defs.' Letter Mot. at 2. Defendants' counsel informed ADA Burke that these materials were the subject of the Confidentiality Order and could not be disclosed, whereupon ADA Burke informed Defendants' counsel that LaPierre, whom ADA Burke was prosecuting under Indictment #1967N-17, was in possession of these records. *Id*. ADA Burke said she knew this to be the

---

[6] Judge Corrigan's March 15, 2019 and March 26, 2019 Orders were entered into evidence at the April 30, 2019 evidentiary hearings as Defendants' Exhibits 2 and 3.

case because Officer Hayden had been cross-examined regarding these records during a hearing in LaPierre's criminal matter. *Id.*

Since learning of the disclosure, Defendants have sought to retrieve the documents through arguments brought before this Court and before Judge Corrigan in Nassau County. *See* Fernandez Decl. ¶ 21. According to Plaintiff's counsel, the Norinsberg Firm was not made aware of the disclosure until March 22, 2019, shortly before Defendants' Letter Motion was filed. *See* Hr'g Tr. at 41:25-42:3, 48:6-15.

### III. MOTION FOR CONTEMPT

#### A. The Parties' Filings

As noted, Defendants' application was initially filed by letter motion on March 22, 2019. *See* Defs.' Letter Mot. At the April 30, 2019 evidentiary hearing, following the presentation of evidence and closing arguments by counsel, the Court directed the parties to submit initial briefs within 21 days of receiving the transcript of the hearing. *See* April 30, 2019 Civil Conference Minute Order. Counsel were then to submit any response to opposing counsel's initial brief within two weeks thereafter. *Id.* The Court did not authorize either party to submit a reply. *Id.* Notice of filing of the official transcript was uploaded to ECF on June 5, 2019. *See* DE 59. On July 5, 2019, the parties filed their opening papers. *See* Plaintiff's Memorandum in Opposition to Defs.' Letter Mot. ("Pl.'s Mem.") [DE 64]; Defs.' Mem. On July 19, 2019, Defendants filed what they characterized as a reply brief in support of Defendants' Memorandum in Support. *See* Defendants' Reply in Support of Defs.' Mem. ("Defs.' Reply") [DE 68]. The Court finds confusing the parties' procedure in making their post-hearing submissions. The Court granted both parties the opportunity to file opening briefs setting forth their arguments as to why the requested relief should be granted or denied. The Court then granted each party the opportunity

to oppose their adversary's opening brief. Surprisingly, Plaintiff did not file any opposition and Defendants filed a purported reply. Notwithstanding the manner of the parties' filings, the Court is construing Plaintiff's Memorandum in Opposition and Defendants' Memorandum in Support as the parties' opening briefs and Defendants' Reply as Defendants' opposition.

### A. Defendants' Position

Defendants' counsel asserts that Plaintiff's attorneys overtly violated the clear and unambiguous requirements of the Confidentiality Order by disclosing the Confidential Records without authorization – acts which caused and continue to cause Defendants to unnecessarily expend time and resources. *See* Defs.' Letter Mot. at 4; Defs.' Mem. at 6. Defendants point out that: (1) the Confidentiality Order provides a mechanism by which the parties are to produce material that the producing party deems confidential; (2) the "confidential" designation is to be done at the time of production or within 30 days after production; and (3) with respect to the Confidential Records, the "confidential" designation was made at the time of Defendants' May 18, 2018 production and was not disputed by Plaintiff. Defs.' Letter Mot at 6; Defs.' Mem. at 4. Under the terms of the Confidentiality Order, Defendants contend that: (1) once records are deemed confidential, the records shall be "used for prosecuting and/or defending the [instant action] only, and for no other purpose," and (2) an "unauthorized disclosure in violation of the order shall be subject to discipline by the contempt powers of the Court." Defs.' Letter Mot. at 7; Defs.' Mem. at 4. Defendants assert that the Confidential Records were clearly and unambiguously designated "Confidential" in bold uppercase letters per the terms of the Confidentiality Order. *Id.* In addition, Defendants point out that Plaintiff's counsel did not notify Defendants of the disclosure of the Confidential Records and did not seek Defendants'

consent. *See* Defs.' Mem. at 4; Defs.' Letter Mot. at 7. Defendants' counsel emphasizes that neither willfulness nor bad faith is a prerequisite to a finding of contempt. *See* Defs.' Reply at 1.

In addition to requesting a finding of contempt, Defendants' counsel argues that Defendants should be compensated for the attorney time spent seeking to recover the Confidential Records. Defs.' Mem. at 6. Although Defendants' counsel concedes the dearth of authority concerning the appropriate hourly rate for municipal attorneys, counsel argues that the rate applied by the Court to determine his fees should be similar to rates applied to court-appointed attorneys who serve on the 18B panel in the New York State Courts and the Criminal Justice Act ("CJA") Panel in the federal court. *See id.* at 6-7. In support of counsel's application for attorneys' fees, Defendants have submitted contemporaneous time records which detail 12.75 hours spent working to recover the Confidential Records. *See* Fernandez Decl., Ex. C (Contemporaneous Time and Billing Records).

### B. Plaintiff's Position

Although Plaintiff's attorneys acknowledge that there was a violation of the Confidentiality Order, they explain that the violation was an error made in good faith and ask the Court not to hold Plaintiff's counsel in contempt or issue any monetary sanctions. *See* Plaintiffs' Response in Opposition to Defs.' Letter Mot. ("Pl.'s Letter Opp'n") [DE 49]; Pl.'s Mem. at 7-10. Plaintiff argues that

> [t]he evidence adduced at the April 30, 2019 hearing is clear: There was an unintentional violation of the Confidentiality Order due to a confluence of unfortunate events. From Mr. Meehan's failure to indicate which specific documents were to be sent to Mr. Groder, to Mr. Barros emailing the wrong PDF, and Mr. Groder failing to realize that the "confidential" watermark applied to him before he provided the documents to his client, each one of these seemingly small errors played a role in providing confidential documents to a party who should never have had access to them, Mr. LaPierre. However, the evidence also shows, overwhelmingly, that the disclosure was inadvertent, unintentional, and that any

> sanctions or findings of contempt would not advance any of the specific reasons
> Courts have upheld their usefulness under Fed. R. Civ. P. 37.

Pl.'s Mem. at 1. Plaintiff asserts that sanctions in this matter, while clearly within the Court's discretion, would not serve the objectives for which sanctions are typically levied since Plaintiff's attorneys did not benefit from the disclosure, financially or otherwise, and a deterrent is unnecessary because the disclosure was inadvertent. *See* Pl.'s Letter Opp'n at 3; Pl.'s Mem. at 8-9. Further, Plaintiff's counsel underscores that: (1) neither Attorney Meehan nor Attorney Barros have any history of violating Court Orders; (2) Plaintiff's attorneys were not given an opportunity to remedy the disclosure since they were not aware of the disclosure until March 22, 2019, hours before Defendants filed their letter motion; (3) the Norinsberg Firm has already implemented mechanisms to ensure that an inadvertent disclosure of confidential material will not happen again; and (4) Meehan and Barros have taken full responsibility for their failures in this matter. *See* Pl.'s Mem. at 10-11.

Finally, Plaintiff emphasizes that the imposition of monetary sanctions would be "economically punishing, as well as professionally harmful" to both Barros and Meehan, both of whom are young attorneys with promising careers. Pl.'s Letter Mot. at 4; Pl.'s Mem. at 11-12. Indeed, Plaintiff further notes that Meehan and Barros have already been sternly admonished by their boss and that additional sanctions would be adding "salt to the wound." *See* Pl.'s Letter Opp'n at 4.

## IV. DISCUSSION

### A. Applicable Law

In general, "the power to punish for contempt is inherent in all courts."[7] *Bowens v. Atlantic Maintenance Corp.*, 546 F. Supp. 2d 55, 63 (E.D.N.Y. 2008) (citations omitted). "The underlying concern is 'disobedience to the orders of the [j]udiciary,' not 'merely the disruption of court proceedings.'" *Id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). As such, an individual who disobeys a valid order of the court may be subject to both civil and criminal penalties for his actions. *Id.* (citing *United States v. Petito,* 671 F.2d 68, 72 (2d Cir. 1982)). "Criminal contempt is used to punish the contemnor or vindicate the court's authority; civil contempt seeks to coerce the contemnor into compliance with the court's orders or to compensate the complaining party for losses incurred as a result of the contemnor's conduct." *Id.* (citing *Hess v. New Jersey Transit Rail Operations, Inc.*, 846 F.2d 114, 115 (2d Cir. 1988)).

A party may be held in civil contempt for failure to comply with a court order if: "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Lynch v. Southampton Animal Shelter Found., Inc.*, No. CV 10-2917, 2013 WL 80178, at *5 (E.D.N.Y. Jan. 7, 2013) *adhered to on reconsideration*, 2013 WL 1563468 (E.D.N.Y. Apr. 12, 2013) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058

---

[7] In addition to the Court's inherent power to punish individuals in cases where contempt is established, Federal Rule of Civil Procedure 37(b)(2) states that a court may "treat [] as contempt . . . the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2); *see also* 18 U.S.C. § 401 ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority . . . as—(n.) . . . (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."); *see Dorsett v. Cty. of Nassau*, No. CV 10-01258, 2012 WL 2076911, at *6 (E.D.N.Y. June 7, 2012).

(2d Cir. 1995)). Willfulness or bad faith is *not* a prerequisite to a contempt finding pursuant to

Rule 37. *See Dorsett*, 2012 WL 2076911, at *8 ("a court need not find willfulness or bad faith as

a prerequisite to a contempt finding"); *Paramedics Electromedicina Comercial, Ltda. v. GE*

*Medical Sys. Information Tech., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) ("It need not be

established that the violation [of a court order] was willful."); *Ferrara v. Nordev, LLC*, No. CV

10-5844, 2012 WL 1999643, at *2 (E.D.N.Y. Apr. 10, 2012). Further, the "[p]rocess of

contempt is a severe remedy, and should not be resorted to when there is fair ground of doubt as

to the wrongfulness of the defendant's conduct." *California Artifical Paving Stone Co. v.*

*Molitor,* 113 U.S. 609, 618 (1885); *see Int'l Longshoremen's Ass'n v. Philadelphia Marine*

*Trade Ass'n* 389 U.S. 64, 76 (1967) (noting that the court's contempt power constitutes a "potent

weapon"); *Stein Indus., Inc. v. Jarco Indus., Inc.*, 33 F. Supp. 2d 163, 170 (E.D.N.Y. 1999). The

moving party must establish each essential element by clear and convincing evidence. *Bowens*,

546 F. Supp. 2d at 63-64; *see King*, 65 F.3d at 1058 (finding that "[a] contempt order is

warranted only where the moving party established by clear and convincing evidence that the

alleged contemnor violated the district court's edict."). Further, "[t]he failure to meet the strict

requirements of an order does not necessarily subject a party to a holding of contempt." *A.V. By*

*Versace, Inc. v. Gianni Versace S.p.A.*, 446 F. Supp. 2d 252, 257 (S.D.N.Y. 2006) (quoting *Dunn*

*v. N.Y. State Dep't of Labor*, 47 F.3d 485, 490 (2d Cir. 1995)).

     The relevant statutory framework governing the contempt authority of a federal

magistrate judge is set forth in 28 U.S.C. § 636(e). Under the statute, where a magistrate judge

presides over a pre-trial matter in a case pending before a district judge,

> the magistrate judge shall forthwith certify the facts to a district
> judge and may serve or cause to be served, upon any person whose
> behavior is brought into question under this paragraph, an order
> requiring such person to appear before a district judge upon a day

certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

28 U.S.C. § 636(e); *see Ferrara*, 2012 WL 1999643, at *1. Thus, pursuant to the certification process outlined in 28 U.S.C. § 636(e), the magistrate judge "functions only to certify the facts and not to issue an order of contempt." *Ferrara*, 2012 WL 1999643, at *1 (citing *Hunter TBA, Inc. v. Triple v. Sales*, 250 F.R.D. 116, 118 (E.D.N.Y.2008)). Further, "[i]n certifying the facts under Section 636(e), the magistrate judge's role is 'to determine whether the moving party can adduce sufficient evidence to establish a *prima face* case of contempt.'" *Hunter*, 250 F.R.D. at 118 (quoting *Church v. Steller*, 35 F. Supp. 2d 215, 217 (N.D.N.Y. 1999)); *see Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation v. Duncan & Son Carpentry, Inc.*, No. 14-CV-2894, 2015 WL 3935760, at *3 (E.D.N.Y. June 26, 2015).

In accordance with the magistrate judge's role of "determin[ing] whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt," *Ferrara*, 2012 WL 1999643, at *1, the court, after reviewing the evidence, may decline to certify the case to the district court where the court "determines that the conduct does not rise to the level of contempt" *Lynch*, 2013 WL 80178, at *5. *See also Bowens*, 546 F. Supp. 2d at 72 (declining to certify facts to the district court where movant failed to establish a *prima facie* case of contempt). In the event the court declines to certify facts to the district court for further review, the "district court may not proceed further on a motion for contempt where the conduct at issue occurred before a magistrate judge." *Bowens*, 546 F. Supp. 2d at 72; *see Church*, 35 F. Supp. 2d at 217 (citing *In re Nova Biomedical Corp. v. i-STAT Corp.*, 182 F.R.D. 419, 423–24 (S.D.N.Y. 1998)); *see also*

*In re Kitterman*, 696 F. Supp. 1366, 1370 (D. Nev. 1988) (noting that magistrate's decision not to certify to district court "dispos[es] of the matter").

### B.    Application

#### 1.    *Contempt*

The language of the Confidentiality Order to which Plaintiff's counsel stipulated and signed is clear and unambiguous.  Pursuant to the Order, records "designated . . . 'CONFIDENTIAL' [] shall be retained by the receiving party's counsel and shall not be disclosed or used by an[y] non-designated person . . . [and] [a]ny material marked 'CONFIDENTIAL' shall be used for prosecuting and/or defending the [instant action] only." Confidentiality Order ¶ 6.  Therefore, Defendants have satisfied the first prong of the test for civil contempt under *Lynch.*

The Confidentiality Order and the designation of the Confidential Records were in place and were known to Plaintiff and his attorneys at the time Attorney Barros made the improper disclosure to Attorney Groder.  The evidence of the unauthorized disclosure includes the admissions by both Attorney Meehan and Attorney Barros that *confidential* documents were disseminated by email.  The explanation by Meehan and Barros that Barros sent Groder, as attorney for LaPierre in a totally separate case, the wrong PDF file – when no file containing such confidential information should have been sent – provides the clear and convincing proof of noncompliance sufficient to meet the second prong of the *Lynch* test.  Whatever the "understanding" between Meehan and Barros, if Barros had simply opened the PDF he intended to forward to Groder and reviewed the materials before sending them, he would have observed their "CONFIDENTIAL" designation.  Likewise, had Meehan exercised the most elementary

supervision of a brand new attorney such as Barros, the serious repercussions here might have been avoided.

Yet, according to the third prong of the test for civil contempt, the Court may **not** hold a party in contempt if "the alleged contemnor has been 'reasonably diligent and energetic in attempting to accomplish what was ordered.'" *Ferrara v. Metro D Excavation & Found., Inc.,* 10-CV-4215, 2012 WL 6962214, at *3 (E.D.N.Y. Nov. 30, 2012), *report and recommendation adopted,* 2013 WL 357818 (E.D.N.Y. Jan. 29, 2013) (quoting *Equal Emp't Opportunity Comm'n v. Local 638,* 753 F.2d 1172, 1178 (2d Cir. 1985)).  Here, the Norinsberg law firm takes the position that it was not made aware of the fact that its associates had sent confidential documents to Groder until the firm was informed of that fact by Attorney Fernandez on March 22, 2019, only hours before Attorney Fernandez filed the instant Motion for Contempt.  Pl.'s Mem. at 5. The Court finds that argument somewhat disingenuous in light of the fact that it was the gross negligence of the firm which led to a first-year associate taking action which should never have been delegated to him.

Nevertheless, although the disclosure was caused in large part by the utter failure to exercise reasonable diligence in handling the request from Attorney Groder, the Court is hard pressed to find that Plaintiff's lawyers were not otherwise diligent in attempting to comply with the Confidentiality Order in general.  The fact that Plaintiff's counsel (1) saved the initial May 18, 2018 production as "Discovery Responses Confidential" and (2) subsequently asked Defendants to reproduce the Confidential Records with the watermark moved to the bottom of each page, is some indication of the recognition of the confidential nature of the documents and an intent to comply with the Confidentiality Order.  Further, upon learning of the disclosure, Plaintiff's counsel:  (1) accepted responsibility for the firm's actions; (2) apologized to the Court, Defendants' counsel, and the Individual Defendants; and (3) undertook corrective measures to ensure that such a disclosure does not happen again.  *Compare Powell v. Ward*, 643 F.2d 924,

933 (2d Cir. 1981) (holding superintendent of New York's Bedford Hills Correctional Facility in contempt of an order governing disciplinary proceedings against inmates, where – with respect to the third prong of the contempt analysis – she was "apparent[ly] ignorant" of the [] Order for nearly a year after she assumed office;" she determined "unilaterally and in the face of contrary views of her predecessors and superiors" that the language and spirit of the order could be ignored; and "she "lack[ed] concern for the actual state of compliance efforts.").

For the foregoing reasons, the Court finds that the Defendants have not carried their burden under the third prong of *Lynch*. The Court therefore declines to certify contempt to Judge Spatt since all three prongs of the test for civil contempt have not been satisfied.

However, the issue does not end there. The lack of appropriate and reasonable oversight and the very serious mistakes in judgment exercised here have consequences. Indeed, failure to abide by a protective order is sanctionable under Rule 37. *See* Fed. R. Civ. P. 37 (advisory committee notes to 1970 amendment) (noting that amendment broadened scope of Rule 37(b)(2) to provide for enforcement of orders issued pursuant to Rule 26(c)); *Flaherty v. Filardi,* 03 CIV. 2167, 2009 WL 3762305, at *5 (S.D.N.Y. Nov. 10, 2009) ("Discovery orders such as the Protective Order can be enforced through Rule 37(b)); *Schiller v. City of N.Y.,* No. 04 Civ. 7921, 2007 WL 1623108, at *3 (S.D.N.Y. June 5, 2007) ("Discovery orders that can be enforced through Rule 37(b) include protective orders issued under Federal Rule of Civil Procedure 26(c) ."). The reality here is that highly sensitive and confidential police personnel records have been disseminated to non-parties – and remain at large – with significant consequences for these Defendants.[8]

---

[8]     So significant are police personnel documents that the state legislature has seen fit to codify their confidential nature. *See* New York Civil Rights Law § 50–a ("[a]ll personnel records, used to evaluate performance toward continued employment or promotion, under the

The Court is not persuaded by Plaintiff's argument that sanctions are not warranted because the disclosure of the Confidential Records was not willful or in bad faith. Indeed, in *Dorsett v. County of Nassau*, CV 10-01258, 2012 WL 2076911, at *5-6 (E.D.N.Y. June 7, 2012), a Section 1983 wrongful death action, Judge Spatt sanctioned Peter Schmitt, Presiding Officer of the Nassau County Legislature, for violating a court-ordered confidentiality order where Presiding Officer Schmitt revealed the contents of an internal affairs report during a press interview. *Id.* During an evidentiary hearing concerning the improper disclosure, Schmitt explained that he did not think that he had violated the Order at the time of the interview, but recognized, in retrospect, having made "an error in judgment." *Id.* at 6. In sanctioning Presiding Officer Schmitt and ultimately finding him in civil contempt, Judge Spatt emphasized that "a court need not find willfulness or bad faith as a prerequisite to a contempt." *Id.* at 8. Here, as in *Dorsett*, Plaintiff's attorneys insist that the improper disclosure was unwitting, but concede that more care should have been exercised to prevent the disclosure. *See generally* Pl.'s Mem. Although Attorneys Meehan and Barros have taken responsibility for their error, Plaintiff's argument that the disclosure was inadvertent is not compelling, especially given the sensitive materials contained in the Confidential Records and the fact that they have not been recovered. To this day, it appears that no one knows the extent to which the Confidential Records have been circulated to other inmates and non-parties who have no entitlement to that information.

---

control of any police agency . . . shall be considered confidential and not subject to inspection or review without the express written consent of such police officer . . . except as may be mandated by lawful court order."). Although the protections of Section 50–a "do not govern discovery in federal cases," *United States v. Collier*, No. 10-CR-820, 2013 WL 125691, at *1 (E.D.N.Y. Jan. 9, 2013), the Court recognizes the delicate nature of these records, especially when disseminated for no good reason.

Nor is the Court persuaded by Plaintiff's contention that imposing sanctions would not further the fundamental purposes of sanctions, including specific and general deterrence. The Court finds it quite troubling that an attorney not connected with this case could make a random telephone call to a staff attorney and be provided with sensitive, confidential information -- with no questions asked. The fact that neither associate found it prudent or warranted to bring this request to a partner or shareholder in the firm in the first instance is distressing at best. The circumstances at issue here cause the Court to conclude that there was no reasonable supervisory structure or oversight in place at the law firm, or alternatively that the structure in place was woefully inadequate. The actions raise further concerns about what type of training, if any, was provided to young attorneys. Otherwise, the reckless response to the Groder inquiry (where the entire question of making *any* response should have been vetted), including the unfathomable delegation of such an important matter to a first-year associate, would presumably have been avoided. The Court can only hope that the imposition of sanctions here will deter future incidents of this nature which have such serious consequences.

Although the Court does not take the relief sought lightly, sanctions are appropriate here given the gross negligence with which the Confidential Records were handled. As the court noted in *Williams v. New York City Transit Auth.*, No. 10 CV 0882, 2011 WL 5024280, at *7 (E.D.N.Y. Oct. 19, 2011),

> Neither negligence or gross negligence has been clearly defined in the context of discovery misconduct . . . . These terms simply describe a continuum. Conduct is either acceptable or unacceptable. Once it is unacceptable the only question is how bad is the conduct. That said, it is well established that negligence involves unreasonable conduct in that it creates a risk of harm to others.

*Id.* (internal citation, quotation marks, and alterations omitted). The risk of harm to the Defendants here has been well-established, as a result of which the Court finds sanctions are warranted.

### 2. *Attorneys' Fees*

Defendants seek attorneys' fees based on the conduct of Plaintiff's attorneys. With regard to an appropriate sanction, the Court notes that the party damaged by the conduct warranting sanctions should be made whole for the harm it has suffered. *City of Almaty, Kazakhstan v. Ablyazov*, No. 115CV05345, 2018 WL 1229730, at *6 (S.D.N.Y. Mar. 5, 2018) (citing *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130-31 (2d Cir. 1979)); *Flaherty v. Filardi*, No. 03 CIV. 2167, 2009 WL 3762305, at *6 (S.D.N.Y. Nov. 10, 2009). "Sanctions may include prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence, or requiring the 'disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including the attorney's fees caused by the failure . . . .'" *City of Almaty, Kazakhstan*, 2018 WL 1229730, at *6 (quoting Fed. R. Civ. P. 37(b)(2)(B), (C)).

It is well-settled that a party seeking attorneys' fees is required to submit contemporaneous time and billing records specifying, for each attorney, the date, the hours expended, and the nature of the work performed. *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) ("any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records ... specify[ing], for each attorney, the date, the hours expended, and the nature of the work done"); *Scott v. City of New York,* 626 F.3d 130, 133 (2d Cir. 2010) ("*Carey* establishes a strict rule from which attorneys may deviate only in the rarest of cases."); *Marion S. Mishkin*

*Law Office v. Lopalo*, 767 F.3d 144, 148 (2d Cir. 2014) (stating that *Carey* sets forth the rules governing payment of attorneys' fees in this Circuit). Here, Defendants are represented by the County Attorney's Office, by Deputy County Attorney Pablo A. Fernandez. Defendants have submitted contemporaneous records of time expended and work performed by Deputy County Attorney Fernandez in connection with the instant matter. *See* Fernandez Decl., Ex. C. The records adequately identify (1) the attorney who performed work in connection with the instant matter, (2) the date of the work performed, (3) the nature of the work, and (4) the hours expended. Thus, the Court finds that the records submitted by Defendants are sufficient to support an award of attorneys' fees.

With respect to the reasonableness of the fee, both the Second Circuit and the Supreme Court "have held that the lodestar method — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R. Co.,* 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 522 F.3d 182, 183 (2d Cir. 2007)). The Court should determine the "presumptively reasonable fee" by looking to "what a reasonable client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 183-84 (2d Cir. 2008). However, the circumstances of this case are distinguishable from the usual analysis under the lodestar calculation. Here, the Court is dealing with work performed by a public-sector attorney, not a lawyer in private practice. The standard analysis with respect to range of hourly billing rates consequently does not apply here.

Here, Defendants do not seek a particular rate, instead arguing that Attorney Fernandez should be awarded a rate similar to rates paid in state court to appointed counsel from the 18B

Panel and to rates paid in federal court to appointed counsel who serve on the Criminal Justice Act ("CJA") Panel. Defendants did not provide any information as to the hourly rates of such Panel attorneys. The Court therefore conducted its own independent research and found that 18B Panel attorneys are paid $60 per hour for work performed on misdemeanor cases and $75 per hour for work performed in all other cases, *see* Nassau County New York Assigned Defender Plan, http://nassau18b.org/ (last visited December 20, 2019). CJA attorneys practicing in the Eastern District of New York receive $148 per hour for work performed on non-capital cases, *see* CJA Manual, Appendix A, Hourly Rates for Attorney Time in Non-Capital Cases and Periods of Applicability (February 15, 2019),

http://www.ca2.uscourts.gov/clerk/attorneys/docs/CJA_Manual_apx_A.pdf. Notwithstanding Defendants' omission of a specific rate request for Attorney Fernandez, the Court finds the federal CJA rate for noncapital cases, namely, $148 per hour to be reasonable in these circumstances. *Carter v. Inc. Vill. of Ocean Beach*, No. 07 CV 1215, 2013 WL 816257, at *6 (E.D.N.Y. Mar. 4, 2013), *aff'd,* 759 F.3d 159 (2d Cir. 2014) (awarding Suffolk County defendants attorneys' fees at an hourly rate of $150.00 in a § 1983 civil rights lawsuit where the County asserted that it paid $150 to many outside counsel during the relevant period).

In addition to submitting Attorney Fernandez's time records, Defendants describe Attorney Fernandez's practice experience, reporting that he: (1) has been admitted to practice law in New York since October 2002 and to the Eastern District of New York since January 2003; (2) has worked at the Nassau County Attorney's Office since 2008 and has specialized in civil rights litigation since being assigned to the Litigation Bureau in 2010; and (3) worked in private practice prior to working for the Nassau County Attorneys' Office, litigating criminal defense and construction law matters. *See* Fernandez Decl. ¶ 33. The time

records show that Attorney Fernandez spent 12.75 hours litigating the return of the improperly disclosed Confidential Records, including: (1) appearing before Judge Corrigan in Nassau County; (2) interacting with the Nassau County District Attorney's Office; (3) drafting an affirmation in support of the application to search Wayne LaPierre's Nassau County jail cell and; (4) traveling to the Nassau County Correctional Center to execute the Order to search LaPierre's jail cell. *See* Fernandez Decl., Ex. C.

To determine whether the number of hours spent by Defendants' counsel is reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Fox Indus., Inc. v. Gurovich,* No. CV 03–5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir.1992)). A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation . . . ." *Cho v. Koam Medical Servs. P.C.,* 524 F.Supp.2d 202, 209 (E.D.N.Y. 2007) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983)). A party seeking an award of attorneys' fees bears the burden to document "the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflecting, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done." *Cho,* 524 F.Supp.2d at 209 (internal citations, quotation marks, and alteration omitted).

Having reviewed Attorney Fernandez's contemporaneous time entries, the Court finds that the 12.75 hours expended by Attorney Fernandez are reasonable. Further, the Court points out that the parties appeared for an evidentiary hearing on April 30, 2019 for one hour and twenty-eight minutes (1.47 hours). That hearing was essential to the Court's ability to determine exactly what happened which led up to Plaintiff's disclosure of the Confidential Records at issue.

23

The Court therefore finds it appropriate to add 1.47 hours of time to the 12.75 hours Attorney Fernandez spent litigating the return of the Confidential Records, for a total of 14.22 hours.

Accordingly, the Court awards the Defendants attorneys' fees totaling $2,104.56 (14.22 hours x $148). This sanction is imposed upon the Law Offices of John L. Norinsberg, PLLC and is to be paid within 14 days of entry of this Memorandum and Order.

**V.    CONCLUSION**

Based on the foregoing findings, the Court: (1) declines to certify contempt to Judge Spatt; (2) finds that the Law Office of John L. Norinsberg, PLLC and its attorneys involved in this matter acted in a grossly negligent manner in breaching the Confidentiality Order; and (3) awards Defendants attorneys' fees in the amount of $2,104.56 to be paid by the Law Offices of John L. Norinsberg, PLLC within 14 days of entry of this Memorandum and Order.

**SO ORDERED.**

Dated: Central Islip, New York
　　　　December 31, 2019

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge
